## HARLAN v. CITIZENS NAT. BANK OF DANVILLE et al.

Court of Appeals of Kentucky.
June 20, 1952.

Rehearing Denied Oct. 17, 1952.

Jay W. Harlan, Pierce Lively, Danville, Smith, Reed & Leary, Frankfort, for appellant.

Chenault Huguely, Danville, Wiggins & Wiggins, Richmond, for appellee.

SIMS, Justice.

This declaratory action was brought by the Citizens National Bank of Danville, as trustee of George L. Harlan, deceased, against his surviving brother and sister, Jay W. Harlan and Mrs. Sue Robinson, to determine whether a power of appointment the will of their mother, Mrs. Annie S. Harlan, gave George was exclusive or nonexclusive. The chancellor in an exhaustive and well-reasoned opinion held the power to be nonexclusive, which we think was an erroneous conclusion as we will attempt to show.

For the sake of brevity and to avoid confusion, since all persons involved in this litigation, except Mrs. Robinson, have the same surname, we will refer to Mrs. Annie S. Harlan as Annie; to Mrs. Sue Robinson as Sue; to Messrs. Jay W. Harlan and George L. Harlan as Jay and George.

Annie died in February 1939, after executing her will on March 1, 1938. She was survived by three children, Jay, George and Sue. George never married but Jay and Sue married and each have two children. After making certain specific bequests to each of her three children, to her grandchildren and to the wife of Jay, testatrix in the third article of her will devised the residue of her estate to George in trust for life and then provided:

"At the death of said George L. Harlan, said share and his entire interest in my estate, in whatever manner acquired, shall pass to and vest in equal shares in his descendants, per stirpes, and his widow if any, said widow to share and be regarded as one of his

children, provided, however, that said George L. Harlan may devise his interest to his widow, his descendants or my descendants.

"In the event George L. Harlan leaves no descendants nor widow nor makes no testamentary disposition of his said interest as above provided, then one-half thereof shall pass to and vest in Jay W. Harlan or his descendants, per stirpes, and his widow, if any, said widow to be regarded and share as one of his children, and the other one-half thereof shall pass to and vest in my daughter Sue Lee Robinson, but if Sue Lee Robinson does not survive George L. Harlan, the said other one-half shall pass to and vest in Jay W. Harlan or his descendants per stirpes, and his widow, if any, said widow to share as one of the children of said Jay W. Harlan."

George died in 1951, and in the third paragraph of his will he devised all of his property to Jay "absolutely and in fee simple".

It is insisted by Sue that the power of appointment given George in their mother's will was nonexclusive, therefore when he excluded her, his will was void and she inherited from him the same as if he had died intestate. Jay contends that the power was exclusive and he took George's entire estate under his will.

We think it may help to set out the distinction between an exclusive and nonexclusive power. 41 Am.Jur., Powers, § 63, page 852, says:

"Powers of appointment are necessarily either exclusive or nonexclusive, according to the reasonable import of the language creating them. A power is 'exclusive' when there is granted the right to exclude from the distribution any of the designated objects of the power; 'nonexclusive' when no such right of selection or exclusion is conferred. In the case of 'nonexclusive' powers, the exclusion of any member of the designated class in making the appointments invalidates the attempted exercise of the power. But if the do-

nor expressly provides that there may be exclusions, there is no objection to the execution of a power in favor of less than all of the class. There can be no doubt that where a donee is given a power to appoint to all or any one or more of a class, he may appoint to one or more to the exclusion of the others."

Dealing with the same subject "exclusive and nonexclusive power," 69 C.J. § 1949, p. 842 states the rule:

"A power to appoint, divide, or distribute property 'to' or 'among' designated persons, or a specified class, is nonexclusive; * * * the donee's authority extending only to determining what portion each shall receive. Where, however, the power to appoint or distribute the property among 'any of' designated persons, or members of a designated class, or 'such of' them as the donee may wish or direct, * * * it is an exclusive one, and may be exercised by appointing to such one or more of the designated persons, or the members of the designated class, as the donee may choose, to the exclusion of another or others, * * * except where a contrary intention appears in the will."

The more modern rule, and we think the better one, appears in the Restatement, "Property and Future Interest," § 360, p. 1985, in these words:

"The donee of a special power may, by an otherwise effective appointment, exclude one or more objects of the power from distribution of the property covered thereby, unless the donor manifests a contrary intent.

"The nature and scope of the discretion given to the donee depends upon the intent of the donor. When the donor creates a power of appointment it is inferable that he intends the donee to be unrestricted in its exercise except as restrictions are affirmatively imposed. Unless the contrary is indicated, it is to be inferred that the donee is intended to have as broad a power of selection among the objects, including the power to exclude one or

more, as the donor would have had at the time of creating the power or as the donee has with reference to his owned (own) property."

In a nutshell, the Restatement says that the donee may exclude one or more objects unless the donor forbids him to do so.

There is no more difficult phase of the law than that dealing with the construction of wills, especially when courts are called upon to determine the purpose of the testator from what he has written in his will. That nebulous thing—the testator's intention—often reaches the courts years after the will is drawn and must be applied to conditions which never entered the testator's mind, and to persons whose existence testator never even contemplated at the time the will was executed. No two wills are alike, so it is rare when much aid can be gained from the adjudicated cases, or for that matter from the text writers, since most texts are based on court decisions. However, we have been cited to Moore v. Emery, 137 Me. 259, 18 A.2d 781, by appellants, which is quite analogous to the case at bar, and will be discussed later in this opinion.

It is significant that the first part of the second paragraph of article 3, which contains the power given in Annie's will, provides that at the death of George the estate received from his mother "shall pass to and vest in equal shares in his descendants, per stirpes, and his widow, if any, said widow to share and be regarded as one of his children." Evidently, Annie thought this was too great a restriction to place on the estate she devised to George, for she immediately, in the same sentence, permitted him to "devise his interest to his widow, his descendants or my descendants".

■ It was argued orally before us that the power only allowed George three alternatives in his appointment—to his widow, to his descendants or to his mother's descendants. We do not see it that way. Certainly children are descendants, although descendants are not necessarily children, and if we follow the narrow construction given by the chancellor, George could have appointed to his widow or to his children, but not to both groups, despite the fact that in this same sentence his mother wrote the "said widow to share and be regarded as one of his children". Under this construction George had no discretion and could not have devised a portion of the estate to his widow, had he married and not been survived by children, and then divided the balance of the estate between his brother and sister. Manifestly, testatrix did not intend to so restrict George in disposing of the property she devised him. Rather her purpose was to limit the disposition to her family or to George's family as he might "pick and choose".

"Descendants" in Webster's New International Dictionary (2nd Edition) is defined as "one who descends as offspring, however remote; opposed to ancestor and antecedent." This was the meaning given to "decendants" in Moore v. Emery, 137 Me. 259, 18 A.2d 781, at page 789.

Jay has children and grandchildren, Sue likewise has children and grandchildren, all descendants of Annie. It is admitted George was given power to appoint to Annie's descendants. Does Annie's will mean he must appoint to each and every one of her descendants? We think not. Had George lived to a great age and had Jay's and Sue's grandchildren themselves borne children by the time of George's death, these great-grandchildren would have been descendants of Annie. And under the construction of the chancellor, George would have had to devise the estate among all of Annie's descendants and could have excluded none, else his appointment would have been void. This leads to an unreasonable, if not absurd, conclusion.

The first paragraph in article 3 of the will provides if George did not appoint, then his estate vested one-half in Jay or "his descendants, per stirpes, and his widow, if any, said widow to be regarded and share as one of his children," and the other one-half passed to Sue; but if she did not survive George, then the whole of George's estate shall vest in Jay in the manner just quoted. There would be some force in

the argument that the words "per stirpes" prevent the estate of George from being appointed by him to all of Annie's descendants had these words been included in the power. But "per stirpes" were not used in the phrase granting the power of appointment, they were only used in disposing of the property if George died intestate. Neither "per stirpes" nor "descendants" were used in reference to the part of the estate Sue would get had George died intestate. Had Sue predeceased George, could he have appointed to her children and grandchildren? There is nothing in the will intimating he could not and certainly Sue's children and grandchildren are descendants of Annie.

The chancellor seems to have bottomed his opinion on Barrett's Ex'r v. Barrett, 166 Ky. 411, 179 S.W. 396, L.R.A.1916D, 493. There the power was in Lewis Barrett to appoint "to his wife and heirs-at-law". Lewis had no children and was survived by his widow, one sister and two brothers. There, the parties agreed that this was a nonexclusive power, and this court so held. But the real question was whether Lewis made an illusory appointment to his sister and his brothers out of a $150,000 estate when he devised $147,000 to his widow and $1,000 to each of his heirs-at-law. We held that such an appointment was an illusory one. The Barrett opinion is of no help here.

The chancellor in his opinion in the instant case quoted what the Barrett opinion said in reference to McGaughey's Adm'r v. Henry, 15 B. Mon. 383, 54 Ky. 383, "that the power of appointment is nonexclusive where there is no express power of selection or exclusion". We are not willing to follow this rule and think the correct one is as set out in Restatement, "Property and Future Interest," § 360, p. 1985:

"Unless the contrary is indicated, it is to be inferred that the donee is intended to have as broad a power of selection among the objects, including the power to exclude one or more, as the donor would have had at the time of creating the power or as the donee

has with reference to his owned (own) property."

There are two other cases cited in the chancellor's opinion, where he quoted from the Barrett case, which we think are wrong. In the case of Degman v. Degman, 98 Ky. 717, 34 S.W. 523, the power to appoint reads, "among my children as she may think best", which we held to be nonexclusive; and in Clay v. Smallwood, 100 Ky. 212, 38 S.W. 7, the power to the donor's daughter was to appoint to donor's "other children as she may direct". There, it was erroneously held, so we now think, that this was a nonexclusive power. Manifestly, in both the Degman and Clay cases the donee was given the power to "pick and choose" which we held in Shaver v. Ellis, 226 Ky. 806, 11 S.W.2d 949, was an exclusive power.

Perhaps, Moore v. Emery, 137 Me. 259, 18 A.2d 781, is regarded by the text writers as the leading case in America on the question now before us. Specific trusts created in the will of John J. Emery were to terminate at the death of each daughter, who was given the power of appointing "provided it be bequeathed to my descendants". In holding that the powers given the daughters were exclusive ones, the court illustrated that if the power were nonexclusive, each daughter would have to give a substantial amount of her estate to each brother and sister and to each of their issue, since they were all descendants of Mr. Emery, to the great detriment of her own children. We lift this from the opinion, 18 A.2d at pages 791, 792:

"If he had intended to bind the daughters by such a rigid rule, he could just as well have settled himself how the remainder would go after the death of a life tenant. That he did not do so shows that he trusted to the unfettered judgment of the daughters to dispose of the principal of the trusts to his descendants in the light of events which he could not anticipate."

Applying these words to the case at bar, Annie might as well not have given George the right to appoint and have disposed of the remainder herself as she did in the words just preceding the power. That she

did not do so shows she trusted to George's unfettered judgment the disposition of his estate among his descendants or her descendants in the manner he desired.

On page 790 of 18 A.2d, the Moore opinion says: "Strangely enough the inclination of courts has been in cases of doubt to construe powers as non-exclusive". We adhered to this erroneous rule in McGaughey's Adm'r v. Henry, 15 B. Mon. 383, 54 Ky. 383; Clay v. Smallwood, 100 Ky. 212, 38 S.W.2d 7; Degman v. Degman, 98 Ky. 717, 34 S.W. 523, and perhaps others. We now overrule those cases and adopt the modern rule set out in Restatement, "Property and Future Interest," § 360, p. 1985, which has been copied heretofore in this opinion.

▉ The judgment is reversed with directions to enter one that Annie's will gave George an exclusive right of appointment which he has exercised by devising his entire estate to Jay.