OPINION OF THE COURT
Bernard M. Bloom, S.
Testatrix died January 1,1980 leaving a will dated May 10, 1965 which has been probated. The respective litigants join in seeking a construction of article fourth in which testatrix, after naming a niece to administer a trust of the residuary estate for the purpose of paying testatrix’ husband an annuity of $100 per month plus whatever additional sums might be deemed expedient by the trustee, described the final trust purpose as follows: “9(c) Upon the death of my said husband, or upon my death if he has not survived me, to pay over the then remaining principal, together with all accumulated income, if any, or my entire residuary estate, as the case may be, to my cousin Joseph l. barnett, to be distributed by him, at such time, in such *861 manner and in such amounts, if any, as he alone shall determine, to and among his then living children, the then living children of my brother-in-law, irving weinstein, and of my brother, joe barnett.”
Petitioner, the son of Irving Weinstein, instituted this proceeding after Joseph L. Barnett, upon whom the residuary estate had devolved by reason of the predecease of testatrix’ husband, announced he would exercise his purported power of appointment by distributing $500 to petitioner, while dividing the $90,000 to $125,000 balance equally among his own three children and the daughter of Joe Barnett.
Petitioner characterizes this disparate treatment of the enumerated transferees as “grossly inequitable”; Joseph L. Barnett counters that it reflects the wishes of the decedent which she had communicated to him privately. The outcome of this proceeding hinges not, however, on the determination of any such question of fact, but rather upon the resolution of a single issue of law, namely, whether paragraph (c) of article fourth creates a private express trust impressed with fiduciary obligations, as urged by petitioner, or, on the other hand, a special, exclusive power of appointment, as contended by Joseph L. Barnett joined by the executrix of the estate.
The court has examined the sources of argument favorable to petitioner which could be most plausibly juxtaposed to respondents’ well-articulated and ably defended position. Prefatory to proceeding to petitioner’s most cogent argument, it is first necessary to dispose of his assertion that the language in question creates an express trust in contradistinction to a power of appointment.
Paragraph (c) does not, it is true, contain the word “power” or the word “appointment”; on the other hand, neither does “trust” or any derivative of that term appear therein. Since no particular semantic formula is necessary to create either a trust (Steinhardt v Cunningham, 130 NY 292; Matter of Grutz, 203 Misc 110) or a power of appointment (Matter of Thompson, 274 App Div 49; Matter of Hilliard, 86 NYS2d 158), and as both may be created by implication (EPTL 10-4.1, subd [a], par [3]; Robert v Corn *862 ing, 89 NY 226; Matter of Thompson, supra; Matter of Jackson, 57 Misc 2d 896), we must ascertain the intention of the testatrix as expressed in her will as an entirety (Matter of Fabbri, 2 NY2d 236), giving its terms their natural and ordinary meaning (Matter of Gautier, 3 NY2d 502).
In so doing, it is evident from a comparison of the dichotomous language used in paragraphs (a) and (b) of article fourth, on the one hand, and paragraph (c), on the other, that no trust was intended to be created or continued once Joseph L. Barnett received the funds. In paragraphs (a) and (b), testatrix directed in explicit and unmistakable terms that should she be survived by her husband, the residuum was to be held “in trust” for his benefit. Administration of the trust was committed to “my Trustee” (named in article sixth) and specific trust duties to hold, manage, invest and reinvest the corpus and to pay the cestui que trust a monthly annuity and such further sums as were deemed expedient were enumerated. Paragraph (c) does set forth a trust duty insofar as it requires the trustee to pay over the rest to Joseph L. Barnett upon the death of the trust beneficiary (or upon testatrix’ death if her husband had predeceased her). But there the trust was to end. The failure of testatrix to characterize Barnett as a fiduciary, the want of denomination of the payment over to him as made “in trust” and the lack of ascription of trust purposes and duties, none of which are necessarily determinative in themselves, furnish in the aggregate a marked contrast to the use of customary trust terminology in the paragraphs immediately preceding. Moreover, but for the absence of the word “appoint”, the phrasing of the disposition — “to pay over [the corpus] to my cousin, Joseph L. Barnett, to be distributed by him, at such time, in such manner and in such amounts, if any, as he alone shall determine, to and among [described individuals]” — takes one of the classic forms of a special power of appointment.
At this juncture the argument inviting assertion by petitioner is that the special power of appointment admittedly created by paragraph (c) is nonexclusive, that is, not properly exercisable except in favor of all objects of the power equally. Respondents, of course, take the contrary *863 position that the power is exclusive, thereby entitling the appointor to exercise uncontrolled discretion with respect to both selection among the permissible appointees and the quantum of each share. While determination of the power’s character as nonexclusive or exclusive is ultimately dependent upon the testatrix’ intention as expressed in the will (Matter of Corlies, 201 Misc 755), it is necessary first to consider the evolution of these complementary concepts, particularly that of the nonexclusive power, and the presumptions of law which have attached at various points in time.
At common law a nonexclusive power was defined in terms which required only that each object of the power receive some share of the appointive property, however nominal. Since this fact made a nonexclusive power the practical equivalent of an exclusive one at the option of the donee, equity intervened to prevent insubstantial or “illusory appointments”. In 1829, the New York Legislature, responding to the criticism that had been leveled at judicial attempts to establish a line of demarcation between appointments which were substantial and those which were illusory (see Rev Notes to §§ 98, 99, 3 Rev Stat of NY [2d ed, 1836], at pp 592-593), abolished the common-law and equitable doctrines by means of a statutory presumption that a nonexclusive power required equal appointments to all objects of the power (Rev Stat of NY, part II, ch I, tit II, art III, §§ 98, 99, amd without substantial change by L 1896, ch 547, § 138 [Real Property Law, former § 158]). After a 135-year hiatus, the Legislature reverted to the common-law definition of a nonexclusive power (Real Property Law, former § 151, as amd by L 1964, ch 864, § 151, eff June 1, 1965), presumably also thereby resurrecting its concomitant, the illusory appointment doctrine. In any event, it was a short-lived revival since the EPTL, which took effect on September 1, 1967, reinstated the presumption that all objects of a nonexclusive power are to be afforded identical shares (EPTL 10-6.5, subd [a], par [2]).
This testatrix’ will was executed on May 10,1965. As has been outlined, the “modern” conception of the nonexclusive power which had been adopted in this State in 1829 was *864 reflected in the law in effect on that date. The Legislature had, however, enacted the amendment which was to restore the common-law definition as of June 1,1965, both as to nonexclusive powers created prior and subsequent thereto (Real Property Law, former § 167). But as no rights accrued under the will until the testatrix’ death on January 1, 1980, the pertinent provisions (10-3.2, subds [d], [e]; 10-6.5) of the EPTL govern (EPTL 1-1.5). Consequently, if it is determined that a nonexclusive power was created, it may be exercised only by equal appointments to all objects, assuming there is no contrary expression of intent within the will.
We now proceed to consider whether an exclusive or nonexclusive power was intended to be created in the case at bar. The operative wording of the power is “to *** Joseph L. Barnett *** to be distributed by him *** to and among” specified persons (emphasis added). Chancellor Kent long ago recorded the view that where, as here, the power was to appoint “amongst” the named or described persons as the donee should think proper a nonexclusive power was intended while an exclusive power was conferred where the phrasing was “to such” of the individuals as he should deem proper (4 Kent’s Commentaries, American Law [1840], pp 342, 343). This apparently remains the rule in the majority of States (Restatement, Property, § 360, comment c, illustrations 3, 4). Indeed, the New York statutes in effect from 1829 until June 1, 1965 (Rev Stat of NY, part II, ch I, tit II, art III, §§ 98, 99, superseded by Real Property Law, former § 158 [eff 1896]) provided that an appointment “among” (or “to” or “between”) named objects conferred a nonexclusive power unless the grant affirmatively imported that the fund was to be distributed in- such manner or proportions as the donee thought proper. While most cases decided thereunder thus viewed a gift phrased “amongst”, “to” or “between” the designees as sufficient to support a finding that a nonexclusive power was intended in otherwise equivocal circumstances (Matter of Conner, 6 App Div 594, affd 155 NY 627; Conner v Watson, 1 App Div 54; Matter of Gottfried, 41 Misc 2d 575; Matter of Feeney, 123 Misc 78), their authority was not unbroken. It was ventured, for example, *865 that a judicial perference for the exclusive power was warranted (see Matter of Skidmore, 148 Misc 569, 575) and, in a decision of particular relevance to the case at bar, a grant of discretion to appoint among the objects “in such manner” as the donee should deem proper was held to have created an exclusive power despite lack of express authority to fix the proportions (Matter of Corlies, 201 Misc 755, supra; but see Matter of Conner, supra; Matter of Feeney, supra). At any rate, upon the recommendation of the Commission on Estates (NY Legis Doc, 1964, No. 19, Appendix O, p 623), a statutory presumption favoring the exclusive power was engrafted onto the successor statute (Real Property Law, former § 151). While that preference was not explicitly carried over to EPTL 10-6.5, which governs the instant case, no change in policy should be inferred (Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 10-6.5, 1980-1981 Pocket Part, p 200; Matter of Stevenson, 68 Misc 2d 619, affd 39 AD2d 1015). We note in passing that such a preference is deemed warranted by leading authorities as in accord with the usual intention of the modern donor to permit the donee the widest possible latitude to exercise the power in the light of circumstances existing at some future date perhaps far removed from its creation (see Restatement, Property, § 360; Simes and Smith, Future Interests [2d ed], § 982, p 468).
As the appearance of the word “among” is not fatal to the prospect of finding a power exclusive, which is the preferred result, we proceed to examine the remainder of paragraph (c)’s language. Joseph L. Barnett is given broad discretion to choose the time, manner and “amounts, if any” of the dispositions. The “if any” qualification of the words “amounts” requires particular scrutiny. At first glance it might appear to signify that the power of appointment was discretionary and not imperative. If so, it would have no bearing on the question whether the power was intended to be exclusive or nonexclusive, since either may be discretionary. But in view of the absence of a gift over in default of appointment (Merrill v Lynch, 173 Misc 39) and the use of the phrase “shall determine” (Matter of Seidman, 88 Misc 2d 462, mod 58 AD2d 72) it must be concluded that *866 the power is imperative. Thus, the “if any” can mean only that the donee was given the power to exclude one or more of the permissible appointees.
Further evidence that an exclusive power was intended can be gleaned from subsequent provisions of the will. It is reasonable to infer from testatrix’ selection of Joseph L. Barnett as successor and substitute trustee of the testamentary trust intended for the benefit of her husband that she reposed a great deal of confidence in his ability and integrity. He was authorized, should he serve in that capacity, to exercise a lengthy list of broad powers among which were the power to refrain from acting as if disinterested with respect to estate property in which he had a personal interest, to adjust debts and to hold money without receipt of interest. Testatrix specified, in addition, that his liability for loss was to be limited to acts or omissions amounting to actual fraud or willful misconduct.
There are, in summation, no contraindications that would serve to overcome the presumption in favor of an exclusive power. In fact, it would appear from the literal sense of paragraph (c) that Joseph L. Barnett was given complete discretion with respect to the timing of the power’s exercise, selection among the permissible appointees and the quanta of shares.
Accordingly, the court determines that testatrix created an exclusive power of appointment. The donee may exercise it in any manner consistent with this opinion.